## James J. Baird v. Ira E. Randall.

*Agent's authority to remit debt—Consideration—Settlement.*

1. The owner of a mortgaged farm traded it for another, the purchaser assuming the mortgage. It was understood, however, that if the amount due upon it should vary either way from $3300 the difference should be paid by one party to the other. The vendor advanced fifty dollars to cover a possible excess which the purchaser might have to pay. The parties had a meeting with the mortgagee's agent and the amount due was roughly estimated at $3302.42. The agent afterwards found that this reckoning was wrong and that the amount should have been $3357.38. The difference, if any, between the excess and the fifty dollars was to be returned to the vendor, and he sued the purchaser for all but $2.42 on the ground that the estimate fixed the excess to be paid. *Held,* that in the absence of any showing by plaintiff that the difference between the two sums had been remitted by the mortgagee, or that her agent had authority to remit it, or that there was any consideration for so doing, the action would not lie.

   And the fact that plaintiff had bought in outstanding tax-titles which had inured to the mortgagee's benefit would not be a sufficient consideration to support an obligation on the mortgagee's part to make such an abatement.

2. It is error to instruct the jury as to what the evidence of a witness amounts to; it is their business to determine its effect.

Error to Ingham. (Gridley, J.) June 18.—Sept. 29.

Assumpsit. Defendant brings error. Reversed.

*Nichols & Humphrey* for appellant. Authority to collect a debt does not imply authority to release any part of it without payment: Story on Agency § 99; *Herring v. Hottendorf* 74 N. C. 588; *Melvin v. Lamar Ins. Co.* 80 Ill. 446; *Reynolds v. Continental Ins. Co.* 36 Mich. 131; or to compromise a mortgage claim: *Atlas Min. Co. v. Johnston* 23 Mich. 36; *Herring v. Hottendorf* 74 N. C. 588; *Chilton v. Willford* 2 Wis. 1; simple contracts must be founded on a valid consideration: 7 Term Reports 350 (note); *Converse v. Blumrich* 14 Mich. 110; *Davis v. Strobridge* 44 Mich. 157; *Halsted v. Francis* 31 Mich. 113; *Jennison v Stone* 33 Mich. 101; an agreement to receive less than a party is entitled to

by his contract unless upon some new consideration, is void: *Fitch v. Sutton* 5 East 230 ; *Cumber v. Wane* 1 Sm. Lead. Cas. 599 ; *Simmons v. Clark* 56 Ill. 96 ; *Crowley v Vitty* 7 Exch. 319 ; *Dedrick v. Leman* 9 Johns. 333 ; *Harrison v. Wilcox* 2 Johns. 448 ; *Seymour v. Minturn* 17 Johns. 169.

*Cahill, Ostrander & Baird* for appellee.

CHAMPLIN, J. Previous to February, 1883, the plaintiff owned one hundred and twenty acres of land near the city of Lansing, known as the "Dart farm," upon which was a mortgage of $2500, given in 1878 to a Mrs. Dunham of Ypsilanti. The mortgage drew interest at the rate of eight per cent., payable semi-annually, and the interest was in arrear since April 4, 1879, and on February 1, 1883, the amount due on the mortgage was something over $3350.

The defendant, at the date first above mentioned, owned a piece of land near Chesaning, and on the first of February, 1883, the plaintiff and defendant traded farms. In the trade the Dart farm was considered as worth $5500. The exact amount due to Mrs. Dunham was at that time unknown to the parties. In the trade, the defendant conveyed to plaintiff the Chesaning land, assigned some mortgages he held upon other lands, paid some money, and assumed and agreed to pay $3300· of the Dunham mortgage, if the mortgage amounted to that sum at that date ; if it should be less than that sum he was to pay plaintiff the difference.

The deed executed by the plaintiff and delivered to defend_ant, which bore date February 1, 1883, was an ordinary warranty deed, in which he covenanted to warrant and defend the premises against all lawful claims, except the above-men_tioned mortgage and except as to the unpaid taxes on the land for the year 1882. It also contained the following agreement :

"This conveyance being made subject to a certain mortgage given by Rollin C. Dart to Eliza B. Dunham, October 8th, 1878, for twenty-five hundred dollars, upon which said mortgage there is due at this date the sum of three thousand and three hundred dollars, and if this last-mentioned amount

shall vary from said amount, the parties hereto agree to make the difference good to the other, which said mortgage the said party of the second part hereby assumes and agrees to pay as a part of the consideration."

It is claimed that one L. A. Barnes of Ypsilanti, was Mrs. Dunham's agent, and had charge of collecting the interest due upon the mortgage. The trade, which was consummated on February 1, 1883, had been preceded by negotiations between plaintiff and defendant, and was made to turn upon the question whether, in case such trade was made, an extension of time could be obtained of three or four years at seven per cent. in which to pay the mortgage. Accordingly on December 26, 1882, the plaintiff addressed to Mr. Barnes the following letter :

"LANSING, December 26, 1882.

*L. A. Barnes, Esq.*—DEAR SIR : I have an opportunity to dispose of the Dart farm for $6000, and the party would like to make a new mortgage to you for Mrs. Dunham's claim in round numbers of $3300. I will take a second mortgage of a thousand. The party buying wants to use some considerable money in improvements, as there is not much of a house and no barn on the premises at present. For this reason I would prefer to let your claim stand at its present amount. The interest he would pay annually at seven per cent., and make principal due in three or four years. If you will make the loan as above indicated, please notify me by return mail, and I will proceed with the deal. Mrs. Dunham's mortgage will be gilt-edged, as the farm is really worth in its present condition much more than I am selling it for, and of course the improvements would add materially to the present value. Please answer by return mail that I may govern myself accordingly."

To which he replied under date of December 30, 1882, as follows :

"YPSILANTI, December 30, 1882.

*James J. Baird, Esq.*—DEAR SIR : I am in receipt of your favor of the 26th inst. In reply will say that Mrs. Dunham will take a new mortgage for the amount you suggest on three, four or five years' time at seven per cent. interest. Have been absent from home for the last three days ; returned only this evening ; hence the delay in answering,

which I trust you will excuse. Expect to be in Lansing soon, and will arrange the matter with you. Please let me hear from you, and oblige."

When the parties closed the trade on February 1, 1883, the plaintiff left in defendant's hands fifty dollars with which to adjust the excess of interest over $3300, which defendant had assumed, with the understanding that whatever way the amount might vary from that sum, the parties would make the difference good to the other, as stipulated in the deed. On the same day defendant addressed to Mr. Barnes the following letter:

"LANSING, MICH., February 1, 1883.

*L. A. Barnes, Esq., Ypsilanti, Mich.*—DEAR SIR: I have purchased of Mr. Baird, the partner of R. C. Dart, the 120 acres of land near this city, upon which Mrs. Dunham holds a mortgage of $2500 given October 8, 1878, by R. C. Dart. I have your letter of October 30, 1882, in which you state that the interest on said mortgage has been paid up to April 4, 1879, and that the interest due up to November 4, 1882, is $758.67, and that would make the interest at seven per cent. from November 4, 1882.

I have paid fifty dollars per acre for this place, or $6000, and it shall be my purpose to pay the mortgage as soon as possible and first to pay the interest and reduce the mortgage to $2500, provided you will make all future interest seven per cent. I would like to let the mortgage remain and pay it as fast as possible, and I think I can very soon reduce it to $3000. I have held from Mr. Baird a reserve, as I did not know just what Mrs. Dunham's mortgage amounted to, and will you please give the amount of interest due up to February 1, 1883, and tell me if you will make future interest seven per cent. and give me a little time to pay the interest.

I am, yours very respectfully."

Mr. Barnes was in Lansing somewhere between the 20th and 24th of February, and there met the plaintiff, and together they went to the office of defendant, where a rough estimate of the amount due upon the mortgage was made, but the note and mortgage were not present and no pretense is made that it was an accurate statement of the amount due. By the figuring there made, the note and mortgage amounted to $3302.42. The defendant requested Mr. Barnes to enter

into a written contract to the effect that this sum was the amount due upon the note and mortgage on February 1, and also embodying the agreement to extend the time of payment and reduction of interest to seven per cent. He says that he was aware at the time that Mr. Barnes had made a mistake in figuring the interest, and wished to have the agreement as to the amount to be paid, in writing, so that there could be no dispute thereafter, and after he should pay over to plaintiff the balance of the fifty dollars. Mr. Barnes made an engagement to call in the afternoon at defendant's office and enter into a contract, and defendant proceeded to draw one up. But Mr. Barnes concluded to leave on the noon train for home, and so informed the plaintiff, and he in turn informed the defendant, and requested him to forward the contract, which defendant did, and also enclosed his certified check for $2.42 for excess of amount due over $3300. After arriving home Mr. Barnes, on making a computation of the amount due on the note and mortgage, discovered his mistake, and refused to accept the $2.42 as payment in full in excess of $3300, and refused to sign the contract, and so informed defendant at Ypsilanti, when defendant called on him in regard to the matter. The exact amount due upon the note and mortgage for principal and interest February 1, 1883, was $3357.38.

The plaintiff claims that, by what transpired in defendant's office between himself, defendant and Mr. Barnes, the amount due on the note and mortgage was adjusted at $3302.42, and that the defendant was thereby obligated to pay him the balance of the purchase money left in his hands to adjust the amount of the mortgage, amounting to $47.58; that it is immaterial that the true amount exceeded that sum; that Barnes agreed to take that sum as a concession, and on account of plaintiff's having purchased some outstanding tax titles which enured to the benefit of the mortgagee.

The agreement contained in the deed was in the nature of an indemnity to the defendant against his paying any amount in excess of what he had assumed as a part of the consideration, namely, $3300. To carry out that agreement for

indemnity the fifty dollars was placed in his hands. The question, therefore, was, What was the amount Mrs. Dunham was entitled to claim, as of the date of February 1st, 1883? The correspondence above referred to shows that the actual amount due at that time was the material question, and such amount was what the parties had in view when they made the deed. There is not the least testimony which tends to prove that, prior to the meeting of the parties in Mr. Randall's office there was any concession claimed or expected would be made from the actual amount due. Unless what occurred at that time concludes Mrs. Dunham, and prevents her from insisting upon being paid the amount actually due to her upon her note and mortgage, she is entitled to receive the principal and accrued interest to that time. In order to deprive her of the right to the payment of this sum, there must have been some valid agreement entered into by her, by which she has remitted the excess over $3302.42. The burthen of proof was upon the plaintiff to show this fact. He was required to show a definite agreement, mutually understood, based upon a sufficient consideration.

Now, under the evidence in this case, two essential elements were lacking to make out such agreement: (1st) The authority of Barnes as agent to make such agreement; and (2d) the consideration to support it. No evidence whatever was introduced or offered to show the nature or extent of the authority of Barnes to act as agent for Mrs. Dunham. The only testimony of any agency whatever is that he acted, with reference to this transaction, in that capacity. Whether he had any authority from her, or, if so, whether it was general. or special, was not shown. All he did and said might have been self-assumed, and without authority from her, so far as this record shows. There was no consideration proved which would support a promise to take less than the amount actually due upon the debt. The fact that the plaintiff, who was at one time the owner of the legal title, and had conveyed by warranty deed to the defendant, had purchased outstanding tax titles without consultation with or request of Mrs. Dunham, the mortgagee, was not a sufficient considera-

tion to support the alleged promise, and no other was claimed or pretended.

The second and fifth requests of defendant's counsel covered these defects in the plaintiff's case, and should have been given. The learned circuit judge, in submitting the case to the jury, seems to have lost sight of the true relation of the parties to the suit as evidenced by the deed, namely, that plaintiff stood in the relation of guarantor to defendant of the amount there should be found due upon the mortgage over $3300; and it is plain upon this record that no new contract has been made between these parties which has changed that relation. The circuit judge in his charge gave the following instructions: "Now, gentlemen, I charge you this in regard to the matter, that it does not concern us here now whether that was the true amount that was due upon that mortgage, provided the defendant has stated here, —that his evidence amounts to that,—that it was so fixed upon by Mr. Barnes, the agent, at that time. In other words, that he cannot be allowed to deny his own statement by proof of facts that are different from what he states them to be; he can't go back on his own testimony in that way, and will be bound by it in spite of whatever might have been the fact in regard to the true computation of this mortgage." It was error for the judge to state to the jury that the evidence of the defendant amounted to a statement that it was so fixed upon by Mr. Barnes, the agent, at that time. It was the province of the jury to determine the effect of the evidence, and whether it amounted to a statement that the amount was fixed upon by Mr. Barnes. It was also erroneous and misleading to instruct the jury in the other words quoted above.

Under the defendant's theory of the case, and upon the evidence given upon the trial, it was competent for defendant to prove, either by his own testimony or that of other witnesses, that a mistake was made in the computation by Mr. Barnes as to the amount due upon the mortgage, and that the real amount due was greater than Barnes computed it, and that the owner insisted on being paid the true

amount. For, unless the mortgagee was bound by the mistake made,—and no reason is shown why she should be,—or, as before stated, she entered into a valid agreement, made by her authority, to take the sum of $3302.42, it was both proper and right for the defendant to show the true computation of the amount due upon the note and mortgage. It is proven, beyond question, that the computation made of the amount due at the time the parties met in Mr. Randall's office was a mistake, and it is not open to serious question upon this record that such computation is not binding or conclusive upon Mrs. Dunham ; and it is difficult to see by what rule of right such mistake is made to absolve plaintiff from his agreement to indemnify defendant against the amount he is obliged to pay Mrs. Dunham over the amount assumed by him as between plaintiff and himself.

The judgment must be reversed and a new trial ordered.

The other Justices concurred.